### MONTGOMERY vs. RUSSELL.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, THE JUDGE
THEREOF PRESIDING.

Where certain property is conveyed to a surety by the principal debtor, to indemnify him against loss resulting from his suretyship, its value, *at the time* of conveyance, must be taken into consideration, when it is offered in compensation and reconvention, against the sums the surety has actually had to pay for his principal.

Where the surety is sued on a bond given for an illicit or illegal consideration, before a competent tribunal, and makes all the defence in his power to avoid the obligation, and fails, and afterwards, to avert seizure or arrest, releases errors and pays the judgment obtained against him, his principal will be bound to reimburse him.

This case had its origin in two suits which Elijah Montgomery, of Mobile, in the state of Alabama, instituted against Gilbert C. Russell, in the months of March and May, 1827, in the parish of Rapides, in Louisiana. The two cases were afterwards consolidated, and have been twice decided on in this court previously to the present appeal. 7 *Martin*, *N. S.*, 288. 2 *Louisiana Reports*, 67.

The facts and pleadings are principally stated in the reports of the case referred to.

It appears that the plaintiff and defendant are brothers in law, and both resided in or about Mobile, in the state of

Alabama, at the time of the transactions involved in this case. The plaintiff alleges, that in October, 1822, he became surety for the defendant in a penal bond for three thousand two hundred dollars, executed to Squire and Silliman, for the delivery of thirty mules; that in consequence of the failure of Russell to comply with the conditions of said bond, he was sued on it as surety, and judgment obtained in 1824 for the amount, with eight per cent. interest and costs, which he was compelled to pay.

He alleges, in his second suit, that he signed a bond as surety for the defendant, in 1821, given for the hire of African slaves, which were in the hands of Mr. Livingston, the United States Marshal, under seizure and libel in the District Court of the United States for the state of Alabama; that suit was instituted on said bond against him as surety, and judgment obtained, notwithstanding he made every defence in his power, for the sum of three thousand five hundred and fifteen dollars, which he has actually paid. He claims the reimbursement of these sums, with interest at eight per cent. per annum, the rate allowed by the laws of Alabama, and his costs and expenses.

The defendant pleaded a general denial, and averred the facts alleged were untrue. He further averred, that the plaintiff was largely indebted to him, as would appear on a final settlement, to wit: in the sum of twenty-five thousand dollars, for which he prays judgment in reconvention.

He avers furthermore, that the judgment of Squire and Silliman on the mule bond was obtained with the consent and collusion of the plaintiff, in his (defendant's) absence, a compromise made to his injury, for fifteen hundred dollars, which was paid out of his funds in plaintiff's hands.

He also avers, that the African bond which was given in 1821, to Livingston, the United States Marshal in Alabama, for the sum of three thousand dollars, as the hire of sundry African slaves, illegally introduced in the country, and then under seizure and libel, was illegal and void, under the laws of the United States; that the plaintiff, who had signed said bond as his surety in his absence, suffered judgment impro-

perly to go against him for the amount thereof, without making a proper defence, and that since he was advised thereof he has appealed from it. This act of the plaintiff, he avers, has injured him, and caused damage to the amount of three thousand five hundred dollars.

He further avers, that being much embarrassed in his affairs, he conveyed to the plaintiff eight hundred and sixty acres of land on Fowl River, with a brick yard thereon, and about six hundred thousand bricks, worth about ten dollars per thousand; also a moiety of eight thousand eight hundred and sixty acres of land on Dog River, and a brick yard, in good order; that the consideration expressed in the deed of conveyance was four thousand dollars, in consequence of which the plaintiff agreed to pay for him a judgment of sixteen hundred and ninety-one dollars to one Lud Harris, and other claims, which he failed to do. He then expressly charges, that the plaintiff has kept his property, and his money received for the sale of brick, and owes him for the hire of slaves, &c., for all of which he prays for leave to prove, and to have judgment in reconvention.

The defendant annexed to his answers ninety-seven interrogatories, which he prayed to have answered on oath by the plaintiff. About half of them were ordered to be answered, and the remainder stricken off, for various causes. Much testimony was taken and read to disprove the answers. The whole evidence is various and contradictory respecting the reconventional demand. The conveyance of the Fowl and Dog River property was made by Russell to Montgomery, in an absolute deed, dated the 15th October, 1821, for the consideration of four thousand dollars, with all the brick and implements for brick making thereon, and that the said Montgomery should hold said property by full title, etc.

The records of the two judgments obtained in Alabama against the plaintiff, as defendant's surety, were introduced as evidence of his demand against the defendant.

The district judge, before whom the cause was tried, on its return from the Supreme Court the second time, gave

judgment for both of the plaintiff's demands, rejecting the defendant's claim in reconvention. The defendant appealed.

The cause was argued in writing by Thomas, of counsel for the plaintiff, and Dunbar for the defendant.

*Thomas* contended, on the part of the plaintiff, that he was entitled to recover sixteen hundred and twenty-one dollars on the first judgment, and three thousand five hundred and fifteen dollars on the second, being the amount the surety had paid, together with interest at eight per cent., the rate allowed by the laws of Alabama, and all his costs and expenses incurred about these suits in that state.

2. This case rests on authenticated judgments of another state, and must have all the force and effect here they would be entitled to have there. By the laws of Alabama, a confession of judgment operates a release of errors, and by those laws a surety has a right to confess judgment, (which operates a release of errors) and in a summary way proceed against his principal for indemnity. So a release of errors, as was done by the plaintiff, does not affect his right to recover from his principal.

3. The defendant cannot plead ignorance of the pendency of these suits in Alabama. The correspondence between them shows that Russell had three years notice, and gave no assistance to his surety. He was compelled to release errors, to avoid having his property seized and his person arrested. By doing this, he obtained more favorable terms of payment. To have appealed would have subjected him to additional risks and expenses.

4. The first question presented by the evidence elicited in the answers to the interrogatories, is, was the property conveyed by the deed of October 15, 1821, intended to pay other debts than what was owing by Russell to Montgomery at the time? The latter, in his answer, on oath, says, "at the time you done so, (made the conveyance) I gave you credit for wishing to pay your debt to me, and did not suppose you had any other motive." This is proof full and

complete to show the consideration for which the property was conveyed.

5. The fact is further proved, that at this time Russell was running all his negroes and movable property from the state and did so; the immovable property he conveyed to the plaintiff, by preference to letting his other creditors have it.

6. The answers of Montgomery to the many interrogatories propounded, fully show that the Fowl and Dog River property was conveyed to pay debts then owing to him by Russell. The latter has taken the depositions of the three Hollingers, his two brothers-in-law, and his mother-in-law, to discredit the plaintiff's answers. These witnesses, all influenced by family antipathies, as appears on the face of their depositions, furnish all the evidence against the answers, while many of the witnesses have spoken highly in favor of the plaintiff's integrity and character for truth. It cannot be doubted that he spoke the truth.

7. But suppose the defendant put this property into the hands of the plaintiff, to pay his debts generally, it was not sufficient to pay the amount he then owed the plaintiff. The latter, in his answer to the forty-fifth interrogatory, annexes an account, in which he shows the defendant was indebted to him in the sum of five thousand eight hundred and seventy-nine dollars, at the time he got possession of the deeded property. This was before the liability accrued on the surety bonds.

*Dunbar,* for the defendant.

1. This case has been several times before this court, and the decisions have uniformly been favorable to the defendant. It was remanded the last time, because this court could not agree with the jury in their verdict for the plaintiff, and *a fortiori* must the decree of the district judge who tried the cause *alone,* the last time, be *reversed.*

2. The case was not remanded for a jury or the court to inquire whether Russell had placed property in Montgomery's

hands to indemnify him as his surety, but that the cause should have been decided according to the previous decisions of this court. These the district judge have disregarded, in giving judgment against the defendant.

3. The testimony of the two witnesses to the deed for the Fowl and Dog River property shows that the conveyance was made "to secure Montgomery for responsibilities for Russell," and that he was to pay a certain debt for the latter to one Lud Harris of about sixteen hundred and ninety dollars.

4. It cannot be pretended that this conveyance was a sale. The *price* mentioned in the deed was not even spoken of when Russell voluntarily brought and handed it to Montgomery. And can it be believed that any debts which Russell owed to M. were to go in payment of the price, when not a word, as the subscribing witnesses testify, was said about them at the time. Had it been so, M's. answer would have been, "You sold me your property for four thousand dollars, and I was to pay you in debts that you owed me." But this, or any thing like it, he has not said.

5. The evidence of the Hollingers and other witnesses show, that this property was worth eight or ten thousand dollars, at the time of the conveyance, and that the bricks, &c., on the Dog River tract alone, were worth four thousand dollars. It is, at the same time, shown, that Russell only owed M. about one thousand dollars, for the hire of some slaves, and therefore follows, that the conveyance was made to secure M. for coming under responsibilities for Russell.

6. That Montgomery was not responsible to Squire and Silliman on the mule bond, at the date of the conveyance, is of no consequence. Russell had placed him in possession of valuable property, part of which (the bricks) he was enabled to sell for cash; and long before he had any thing to pay, as surety, he had received four or five thousand dollars in money, and enjoyed the rents and profits of the property several years. The presumption is therefore irresistible, that he became Russell's surety, in consequence of being in possession of his property and funds.

7. This conveyance or deed must be considered, under

our laws, as an antichresis, and the plaintiff's remedy was, to have the property sold to pay the claims for which he became bound as surety of the defendant. *Civil Code*, 448, *articles* 22, 23, 24, 25.

8. Instead of the creditor having the right to impute any payments that are made, it is the *debtor's* right to impute payment and apply it to the debt he prefers to have first paid. If, however, in this case, the deed should not be considered as an antichresis, but as conveying an absolute title, we must then have the full value of the property allowed.

9. The answers of plaintiff to the interrogatories are contradictory and not to be relied on. It is, however, said, we have made him our witness and cannot impeach his testimony, unless by two witnesses, to disprove his statement. This is the provision of the Code of Practice, but it must receive a reasonable construction. It is the object of all legal investigations to arrive at truth. These answers, like all other testimony, might be stamped with falsehood on their face. Are they then to be believed, or taken as true? Is a witness who contradicts himself, or prevaricates, to be believed? It is a rule of evidence, that treachery in a witness should not exclude a party from establishing the truth by the aid of other testimony. 1 *Starkie on Evidence, part* 2, 147.

10. It will then be seen, from the examination of the testimony, that the plaintiff is contradicted, both as to the value of the deeded property, the objects Russell had in view when he made the conveyance, and the amount of his debts due to the plaintiff, by more than three or four of the witnesses, and those, too, of respectability.

11. The defendant is not liable for the amount claimed as having been paid to the heirs of the marshal, on the African bond, because the consideration and object of that instrument were illegal, being for the hire of African slaves illicitly and illegally introduced into the country, and under libel in the U. S. District Court at the time. It was illegal in the marshal to hire them out, for his own emolument, as slaves, and contrary to the genius and spirit of our laws.

1 *Kent's Commentaries*, 184.  4 *Peters*, 184.  *Ingersoll's Digest*
*U. S. Laws*, 805.  *Section* 11, *of Act of* 1819.  *Ibid.*, 376.

12. The surety should have made this defence to the suit on the bond ; but instead of doing so, as directed by the defendant, he released errors after judgment of the inferior court of Alabama, and prevented any further defence by the principal on an appeal.  He has now no right to recover by reason of this release.  *Pothier on Objections, Nos.* 433 *to* 436.

*The defendant, in propriâ personâ,* read an elaborate written argument to the court, commenting and criticising on the evidence and facts of the case with much severity and at great length.

*Matthews J,* delivered the opinion of the court.

This case has been twice before the Supreme Court before the present appeal.  In the two previous instances, verdicts of juries had been obtained, on which the judgments were based.  The cause was remanded on the first appeal, in consequence of the defendant having been improperly ruled to trial.  On the second, it was sent back because the appellate tribunal could not fully concur with the jury, in relation to their conclusions on the facts.  The object of this remanding appears to have been to obtain a determination on the facts of the case by another jury.  On its going back to the court below, the parties waived their right to a trial by jury.  The cause was submitted to the judge *a quo,* who rendered judgment in favor of the plaintiff, from which the defendant appealed.

The cause as it now stands before the court, presents two principal questions ; one of fact, in relation to the value of certain property conveyed by the defendant to the plaintiff, for the purpose of securing the latter against losses, which he might sustain in consequence of debts due him by the former, and sums of money which he the plaintiff might be compelled to pay as surety for the defendant ; another of law, viz : whether the appellee did not pay in his own wrong, the sum of money stipulated in favor of the marshal

43

of the United States, for the State of Alabama, by the defendant, in a bond in which the plaintiff became his surety, the consideration of the obligation being illicit, according to the laws of the United States.

The whole amount owing by the appellant to the appellee, including the personal obligations of the latter, with claims for sums by the former as having been paid on the score of suretyship, is about nine thousand dollars, without interest. If interest were to be now added, at the rate of eight per cent. per annum, the rate of legal interest in the state of Alabama, the whole sum would probably exceed the most extravagant valuation of the real property conveyed to the plaintiff, as a surety against his responsibilities for the defendant. But in order that this property may be made to compensate, under the plea in reconvention, the debts due to the plaintiff, its value at the time of conveyance must be taken into consideration. The testimony on this part of the cause is variant and contradictory. The verdict of the jury, to whom the case was submitted on the second trial, and the judgment of the court on the last, seem to fix the value of the property claimed in reconvention, at a price not more than sufficient to satisfy the direct claims of the appellant against the appellee, and in this we are not prepared say there was error, considering the contradictory evidence offered on the subject.

It only remains to examine the second question in the case, which we have stated is one of law. The plaintiff, as already assumed, became surety for the defendant, in a bond given by the latter to the marshal of Alabama. The contract ought, probably, to have been avoided, on the ground of illegality in the consideration. Suit was however, brought on this bond in a competent tribunal, in the State of Alabama, against the surety, who used all means of defence in his power, but in spite of this, he was compelled to pay the whole amount of the obligation, by a judgment of the court. In order to save his property from immediate seizure, or his person from arrest, under execution, he made terms with the plaintiff in the case, by releasing errors,

*Where certain property is conveyed to a surety by the principal debtor, to indemnify him against loss resulting from his suretyship, its value at the time of conveyance must be taken into consideration, when it is offered in compensation and reconvention, against the sums the surety has actually had to pay for his principal.*

*Where the surety is sued on a bond given for an illicit or illegal consideration, before a competent tribunal, and makes all the defence in his power to avoid the obligation, and fails, and afterwards to avert seizure or arrest, relea-*

&c., and finally paid the full amount of the judgment rendered against him, as already stated.

We are of opinion, that by the release of errors, the surety in acting in this manner for his own safety, did nothing prejudicial to his principal, who might either have obtained a writ of error, or brought suit to annul the bond on account of illegality. The surety did all, which in our opinion he was bound to do, to avoid the payment of this debt, both in relation to himself, and the principal debtor.

ses errors, and pays the judgment obtained against him, his principal will be bound to reimburse him.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.